Campbell, Chief Justice,
concurring:
The liability of the Government for the taking of private property for public uses is enforceable in this court because of the implied promise which the law raises up that the Government will pay just compensation for the property taken. “The suit must rest upon contract, as the Government has not consented to be sued for torts, even though committed by its officers in the discharge of their official duties.” Per Mr. Justice Hughes in Peabody’s case, 231 U. S., 538, 539.
The rule is stated in United States v. Great Falls Manufacturing Co., 112 U. S., 645, 656, as follows: “ The law will imply a promise to make the required compensation where property to which the Government asserts no title is taken, *152 pursuant to an act of Congress, as private property to be applied for public uses. Such an implication being consistent with the constitutional duty of the Government, as well as with common justice, the claimant’s cause of action is one that arises out of implied contract, within the meaning of the statute which confers jurisdiction upon the Court of Claims of actions founded ‘ upon any contract, express or implied, with the Government of the United States.’ ”
Unless, therefore, out of the facts the law can raise an implied promise on the part of the Government this court is without jurisdiction to proceed. But when the Government appropriates property which it does not claim as its own, it does so under an implied contract that it will pay the value of the property it so appropriates. Lynah's case, 188 U. S., 445, 464.
There is no difficulty in applying the rule where lands are submerged or permanently injured by “ back water ” caused by a dam erected by the Government. The injury that will inevitably result from back water can be said to be at least measurably ascertainable before the dam is built. The Government engineers can determine what lands will be affected by back water when the pool is full. The Government at that time knows or can know the limits of its liability, and if with that knowledge and means of knowledge it erects a dam it is but just to hold that the Government undertakes to pay the individual for the property of which he is deprived by water in the pool produced by the dam. What the Government impliedly agrees to pay for is that property of the individual which is taken for public uses; and, speaking generally, the Government may be said to take the property of which it deprives the owner. The land itself may be taken (Pitmpelly’s case); an interest less than the fee may ■ be taken (Cress case, 243 U. S., 316, 329); an easement in land may be taken {Welch's case); a servitude may be appropriated (Peabody's case), or the utility of the land may be destroyed (Lynah's case), and recovery therefor may be had in this court. But when damages are sought, as in the instant case, because the elevation of flood waters are supposed to have been heightened by reason of the dam furnishing an obstruction to their escape, it is manifest that we *153 must go beyond the adjudicated cases to sustain a recovery. Did the Government appropriate the plaintiff’s roads or bridge by the erection of a dam which, with water standing at pool level, had no injurious effect on the roads or bridge? Did the Government impliedly promise to pay damages to persons owning lands along said river i-f they could show that after the dam was erected floods came, and that the dam contributed in some more or less remote degree to raise the elevation of the floods at particular places, whereby their lands were injured? This court has no jurisdiction of actions for damages sounding in tort; and, as stated above, the promise which the law implies, and of which this court may have cognizance, is that the Government will pay for that property which it takes, or of which it deprives the owner, for public uses.
The plaintiff alleges a taking of its property, but the facts show that its roads were injured by flood waters, in times of freshet, coming down the Monongahela River, and that its bridge across Paw Paw Greek, a tributary of said river, was washed away by a heavy freshet in that creek. The plaintiff was not a riparian owner even except posssibly as to the bridge and its abutments.
When the dams were constructed and water stood at pool level the roads and bridge were not damaged by the water at that stage. That the Government can not be held liable for the loss of the bridge under such circumstances seems clear upon principle as well as authority. In China v. Southwick, 12 Me., 238, a dam had been erected which raised the head of water, but not so high as to flow upon or injure the plaintiff’s bridge. Afterwards, by great rains and winds, the waters were thrown upon the bridge, destroying it. The owner of the bridge sued the owner of the dam for the alleged damage caused to the bridge. The court recognized that if the dam had not raised the water to a certain height the rain or the wind superadded might not have done the damage, and said: “ It would be carrying a doctrine of liability to a most unreasonable length to run up a succession of causes and hold each responsible for what followed, especially where the connection was casual and unexpected, as it was here, and where that which is attempted to be charged was in *154 itself innocent. The law gives no encouragement to speculations of this sort.”
In Monongahela Navigation Co. v. Coon, 6 Pa. St., 379, the principle is recognized, though in that case a liability was fixed because of the terms of the act under which the defendant was incorporated. It was there said, however: “ It is certainly true, as contended, that a riparian owner is entitled to swell the water in the channel of the stream in its natural state upon his neighbor’s line, and that he is not answerable for damage done by high water, however it may have been incurred by the obstruction below. The reason of the rule is that as damage from floods may be increased by almost any obstruction whatever it is inseparable from even a reasonable use of the stream in a way to produce the greatest benefit to all the riparian proprietors.” To the same effect is Smith v. Agawam Canal Co., 2 Allen (Mass.), 355.
The doctrine stated in the cases cited applies also to the plaintiff’s claim on account of its roads. As was said by the Massachusetts court in the case cited: “ It is a necessary consequence that if the plaintiff sustained any damage by the rise of water it must have been owing to the occurrence of freshets and extraordinary floods. For the action and results of these causes' the defendants can not be held liable. Their dam was so constructed that without the intervention of forces casual and extraordinary, over which they could exercise no control, it could not have been the occasion of any possible injury to the plaintiff.”
And if the rule as to liability for injuries caused by floods or freshets, but aggravated by a dam or structure erected and maintained by a defendant, were otherwise than as stated, it would still be true that an action brought to recover damages for the alleged injuries would sound in tort and could not be maintained against the Government in this court. Mill's case, 46 Fed., 738, approved by the Supreme Court in Lynah’s case, 188 U. S., 473.
The plaintiff apparently relies upon the Cress and Kelly cases, and Judge Downey has given what seems to me to be a correct analysis of those cases. They deal with back water from the river caused by a dam and not with injuries caused by flood waters descending from the upper stretches *155 of tbe stream. A party can not under the guise, of a taking maintain an action in this court for consequential damages.
While the adjudicated cases have held that the Government impliedly promises to pay for property taken for public uses, they have not held that the Government is liable for such damage to lands as may be affected, indirectly or remotely, by flood waters descending after the completion of a dam, nor has it been assumed that the court has jurisdiction of a case claiming such remote damages. As suggested by Judge Downey, we may know with some certainty when a dam is built and the pool begins to fill what lands or interest therein are or will be appropriated. That date should fix the time of the taking. But if the view of plaintiff prevails it must follow that the Government can not, nor can anyone, know until long after the Government’s work is completed and the Government has done all it intended to do whether thereby it has appropriated private property for public uses.
When the water had reached pool level the taking, so far as there was any, was complete. The fact that it required the intervention of another and efficient cause to produce the injury of which plaintiff complains simply confirms the view that this action is not for a taking but seeks consequential damages.